Clerk's Office
U.S. District Court
1301 Clay Street
Oakland, CA 94612

FILED

OCT 16 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

| PROB 22 (Rev. 2/88) | **TRANSFER OF JURISDICTION** | | DOCKET NUMBER *(Tran. Court)*<br>1:19CR10117-IT-7 |
|---|---|---|---|
| | | | DOCKET NUMBER *(Rec. Court)*<br>CR 20-0383 JD |

| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE:<br><br>Agustin Francisco Huneeus | DISTRICT<br><br>DISTRICT OF MASSACHUSETTS | DIVISION<br><br>Criminal, D/MA, Boston |
|---|---|---|
| | NAME OF SENTENCING JUDGE<br>Honorable Indira Talwani, U.S. District Judge | |
| | DATES OF PROBATION/SUPERVISED RELEASE: | FROM<br>3/17/2020    TO<br>3/16/2022 |

| OFFENSE |
|---|
| Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud in violation of 18 U.S.C. § 1349, 1341, and 1346 |

| PART 1 - ORDER TRANSFERRING JURISDICTION | **FILED** |
|---|---|
| UNITED STATES DISTRICT COURT FOR THE "DISTRICT OF MASSACHUSETTS" | Oct 09 2020<br><br>SUSAN Y. SOONG<br>CLERK, U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA<br>SAN FRANCISCO |

IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the **Northern District of California** order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court. *

| 9/22/2020 | *Indira Talwani* |
|---|---|
| Date | United States District Judge |

*This sentence may be deleted in the discretion of the transferring Court.

| PART 2 - ORDER ACCEPTING JURISDICTION |
|---|

UNITED STATES DISTRICT COURT FOR THE District of Northern District of California

    IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

| 10/09/2020 | |
|---|---|
| Effective Date | United States District Judge |

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| GREGORY ABBOTT, MARCIA ABBOTT, GAMAL ABDELAZIZ, DIANE BLAKE, TODD BLAKE, JANE BUCKINGHAM, GORDON CAPLAN, I-HSIN CHEN (see below for additional names) | ) ) ) ) ) | Case No.  MJ No. 19-6087-MPK |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____2011 to the present_____ in the county of ____Suffolk and elsewhere____ in the
_____ District of ____Massachusetts____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC 1349 | Conspiracy to commit mail fraud and honest services mail fraud |

This criminal complaint is based on these facts:

See Affidavit of FBI SA Laura Smith. Amy and Gregory Colburn, Robert Flaxman, Mossimo Giannulli, Elizabeth and Manuel Henriquez, Douglas Hodge, Felicity Huffman, Agustin Huneeus Jr., Bruce and Davina Isackson, Michelle Janavs, Elisabeth Kimmel, Marjorie Klapper, Lori Loughlin, Toby MacFarlane, William McGlashan Jr., Marci Palatella, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh, Robert Zangrillo

☐ Continued on the attached sheet.

Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U.S. District Court
District of Massachusetts
By: _____
Deputy Clerk
Date: 10/13/2020

_____
*Complainant's signature*

Laura Smith, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____03/11/2019_____

City and state: _____Boston, Massachusetts_____

_____
*Judge's signature*

Hon. M. Page Kelley, USMJ
*Printed name and title*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.   $19-10117$ |
| | ) | |
| | ) | Violation: |
| v. | ) | |
| | ) | Count One: Conspiracy to Commit Mail |
| (1) GREGORY ABBOTT, | ) | Fraud and Honest Services Mail Fraud |
| (2) MARCIA ABBOTT, | ) | (18 U.S.C. § 1349) |
| (3) JANE BUCKINGHAM, | ) | |
| (4) GORDON CAPLAN, | ) | |
| (5) ROBERT FLAXMAN, | ) | |
| (6) FELICITY HUFFMAN, | ) | |
| (7) AGUSTIN FRANCISCO HUNEEUS, | ) | |
| (8) MARJORIE KLAPPER, | ) | |
| (9) PETER JAN "P.J." SARTORIO, | ) | |
| (10) STEPHEN SEMPREVIVO, and | ) | |
| (11) DEVIN SLOANE, | ) | |
| | ) | |
| Defendants | | |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      Defendant GREGORY ABBOTT ("GREGORY ABBOTT") was a resident of New
York City and Aspen, Colorado.

2.      Defendant MARCIA ABBOTT ("MARCIA ABBOTT") was a resident of New
York City and Aspen, Colorado.

3.      GREGORY ABBOTT and MARCIA ABBOTT (together, "the ABBOTTS") were
a married couple.

4.      Defendant JANE BUCKINGHAM ("BUCKINGHAM") was a resident of Los
Angeles, California.

Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts
By: _____
        Deputy Clerk

Date: 10/13/2020

U.S. DISTRICT COURT
DISTRICT OF MASS.
2019 APR -8 PM 2: 08
FILED
IN CLERKS OFFICE

5.      Defendant GORDON CAPLAN ("CAPLAN") was a resident of Greenwich, Connecticut and New York, New York.

6.      Defendant ROBERT FLAXMAN ("FLAXMAN") was a resident of Beverly Hills, California.

7.      Defendant FELICITY HUFFMAN ("HUFFMAN") was a resident of Los Angeles, California.

8.      Defendant AGUSTIN FRANCISCO HUNEEUS ("HUNEEUS") was a resident of San Francisco, California.

9.      Defendant MAJORIE KLAPPER ("KLAPPER") was a resident of Menlo Park, California.

10.     Defendant PETER JAN "P.J." SARTORIO ("SARTORIO") was a resident of Menlo Park, California.

11.     Defendant STEPHEN SEMPREVIVO ("SEMPREVIVO") was a resident of Los Angeles, California.

12.     Defendant DEVIN SLOANE ("SLOANE") was a resident of Los Angeles, California.

<u>Other Relevant Persons and Entities</u>

13.     The Edge College & Career Network, LLC, also known as "The Key," was a for-profit college counseling and preparation business based in Newport Beach, California that was established in or about 2007 and registered in California in or about 2012.

14.     The Key Worldwide Foundation ("KWF") was a non-profit corporation founded in or about 2012 and based in Newport Beach, California. In or about 2013, the Internal Revenue Service ("IRS") approved KWF as an exempt organization under Section 501(c)(3) of the Internal

2

Revenue Code, meaning that KWF was exempt from paying federal income tax, and that individuals who contributed to KWF could deduct those contributions from their taxable income, subject to certain limitations.

15.     ACT, Inc. was a non-profit organization headquartered in Iowa City, Iowa that administered the ACT, a standardized test that is widely used as part of the college admissions process in the United States.

16.     The College Board was a non-profit organization headquartered in New York, New York. Together with Educational Testing Service ("ETS"), a non-profit organization headquartered in Lawrence Township, New Jersey, the College Board developed and administered the SAT, a standardized test that, like the ACT, is widely used as part of the college admissions process in the United States. The College Board and ETS also developed and administered SAT subject tests, which are also used as part of the college admissions process.

17.     Georgetown University ("Georgetown") was a highly selective private university located in Washington, D.C.

18.     The University of San Diego ("USD") was a selective private university located in San Diego, California.

19.     The University of Southern California ("USC") was a highly selective private university located in Los Angeles, California.

20.     William "Rick" Singer was a resident, variously, of Sacramento and Newport Beach, California. Singer founded and, together with others, operated The Key and KWF.

21.     Mark Riddell was a resident of Palmetto, Florida. Riddell was employed at relevant times as the director of college entrance exam preparation at a private college preparatory school and sports academy in Bradenton, Florida.

3

22.     Igor Dvorskiy was a resident of Sherman Oaks, California. Dvorskiy was employed as the director of a private elementary and high school located in West Hollywood, California (the "West Hollywood Test Center"). Dvorskiy also served as a compensated standardized test administrator for ACT, Inc. and the College Board.

23.     Niki Williams was a resident of Houston, Texas. Williams was employed as an assistant teacher at a public high school in Houston (the "Houston Test Center"). Williams also served as a compensated standardized test administrator for ACT, Inc. and the College Board.

24.     Gordon Ernst was a resident of Chevy Chase, Maryland and Falmouth, Massachusetts. Until January 2018, Ernst was employed as the head coach of men's and women's tennis at Georgetown.

25.     Martin Fox was a resident of Houston, Texas. Fox was employed as the president of a private tennis academy and camp in Houston.

26.     Steven Masera was a resident of Folsom, California. Until December 2017, Masera was employed as an accountant and financial officer for The Key and KWF.

27.     Donna Heinel was a resident of Long Beach, California. Heinel was employed as the senior associate athletic director at USC.

28.     Jovan Vavic was a resident of Rancho Palos Verdes, California. Vavic was employed as the water polo coach at USC.[1]

---

[1] The individuals identified in paragraphs 20 through 28 have been charged separately in connection with the conduct set forth herein.

General Background on Standardized Testing and the College Admissions Process

29.     Most selective colleges and universities in the United States require prospective students to submit standardized test scores—typically, either the ACT or the SAT—as part of their application packages. When submitted, standardized test scores are a material part of the admissions process.

30.     The ACT includes sections on English, mathematics, reading, and science, and is scored on a scale of 1 to 36

31.     The SAT includes sections on writing, critical reading, and mathematics. Between 2005 and January 2016, the SAT was scored on a scale of 600 to 2400. As of March 2016, the SAT has been scored on a scale of 400 to 1600.

32.     The ACT and the SAT are typically administered to large groups of students on specified dates and under strict time limits. In some instances, however, students with certain learning or other disabilities may qualify for testing accommodations, including extended time, and, in such circumstances, may take the test alone, under the supervision of a test administrator retained by ACT, Inc. or the College Board.

33.     Compensated ACT and SAT administrators owe a duty of honest services to ACT, Inc. and/or the College Board.

34.     Prior to administering the ACT, test administrators must typically certify that they will administer the test in accordance with the ACT Administration Manual, and that they will ensure that the "test materials are kept secure and confidential, used for this examinee only, and returned to ACT immediately after testing."

35.     Similarly, prior to administering the SAT, test administrators must typically certify that they will administer the test in accordance with the SAT coordinator's manual, that the SAT

5

test is the property of the College Board, and that no one other than the student can "open the test book and see the test content."

36.     The ACT tests are typically sent to and from the testing sites via Federal Express, a private, interstate commercial carrier.

37.     The SAT tests are typically sent to and from the testing sites via United Parcel Service ("UPS"), a private, interstate commercial carrier.

38.     The ACT and SAT tests, and the scores students earn on those tests, are the intellectual and physical property of ACT, Inc. and the College Board, respectively.

39.     The athletic teams of Georgetown, USD, and USC (collectively, the "Universities") compete in most sports at the Division I level, the highest level of intercollegiate athletics sanctioned by the National Collegiate Athletic Association ("NCAA").

40.     Many selective colleges and universities in the United States, including all of the Universities, recruit students with demonstrated athletic abilities, and typically apply different criteria when evaluating applications from such students, with the expectation that recruited athletes will be contributing members of the Universities' athletic teams once enrolled. Typically, the admissions offices at the Universities allot a set number of admission slots to each head coach of a sport for that coach's recruited athletes. At each of the Universities, the admissions prospects of recruited athletes are higher—and in some cases substantially higher—than those of non-recruited athletes with similar grades and standardized test scores.

41.     University athletic coaches and administrators owe a duty of honest services to the Universities where they are employed.

6

42.     At each of the Universities, admissions slots, the determination of which students
to admit, and the resulting composition of undergraduate classes are important assets of the
University.

### The Conspiracy

43.     From in or about 2011 through in or about February 2019, the defendants conspired
with others known and unknown to the United States Attorney to use bribery and other forms of
fraud to facilitate their children's admission to selective colleges and universities in the District of
Massachusetts and elsewhere.

### Objects and Purposes of the Conspiracy

44.     The principal objects and purposes of the conspiracy were to commit mail fraud
and honest services mail fraud, in violation of Title 18, United States Code, Sections 1341 and
1346, by, among other things:

      a.  Cheating on college entrance exams, including in many instances by bribing
         exam administrators to permit such cheating;

      b.  Bribing university athletic coaches and administrators to designate
         applicants as purported athletic recruits—regardless of their athletic
         abilities, and in some cases, even though they did not play the sport they
         were purportedly recruited to play;

      c.  Having a third party take classes in place of the actual students, with the
         understanding that grades earned in those classes would be submitted as part
         of the students' college applications; and

      d.  Submitting falsified applications for admission to universities in the District
         of Massachusetts and elsewhere that, among other things, included the

fraudulently obtained exam scores and class grades, and often listed fake awards and athletic activities.

### Manner and Means of the Conspiracy

45.     Among the manner and means by which the defendants and others known and unknown to the United States Attorney carried out the conspiracy were the following:

    a.  Seeking extended time for their children on college entrance exams, including by having the children purport to have learning disabilities in order to obtain the medical documentation that ACT, Inc. and the College Board typically require before granting students extended time;

    b.  Changing the location of the exams to one of two test centers: the West Hollywood Test Center or the Houston Test Center;

    c.  Bribing college entrance exam administrators at the West Hollywood Test Center and the Houston Test Center to permit cheating, in violation of their duty of honest services to ACT, Inc. and/or the College Board;

    d.  Paying Riddell or another third party to pose as an ACT or SAT exam proctor, or as a student purportedly taking the exam, so that he could secretly provide students with answers during the exam, replace the students' exam responses with his own, or simply take the exam in place of the students;

    e.  Submitting the fraudulently obtained ACT and SAT scores as part of the college admissions process, including to colleges and universities in the District of Massachusetts.

8

    f.   Bribing university athletic coaches and administrators to designate students as purported athletic recruits or as members of other favored admissions categories;

    g.   Fabricating athletic "profiles" containing falsified athletic credentials— including fake honors the students purportedly received, elite athletic teams they purportedly played on, and staged photographs of the students purportedly engaged in athletic activity—to submit in support of the students' college applications; and

    h.   Explaining to clients and prospective clients of The Key that these fraudulent schemes were tried-and-true methods of improving exam scores and gaining admission to college that had been successfully employed by many other clients.

## Acts in Furtherance of the Conspiracy

46.    On various dates from in or about 2011 through in or about February 2019, the defendants and others known and unknown to the United States Attorney committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

## GREGORY ABBOTT and MARCIA ABBOTT

47.    In or about 2018, GREGORY ABBOTT and MARCIA ABBOTT agreed to pay Singer an amount, ultimately totaling $125,000, to participate in the college entrance exam cheating scheme for their daughter.

48.    On or about March 13, 2018, MARCIA ABBOTT e-mailed Singer her daughter's ACT registration form and admission ticket, in preparation for her daughter taking the ACT at the West Hollywood Test Center.

9

49.     On or about April 9, 2018, Singer caused a KWF employee to e-mail GREGORY ABBOTT an invoice for $50,000, with a note thanking him for his purported "generous donation to the Key Worldwide Foundation." Singer was copied on the e-mail, and later forwarded it to MARCIA ABBOTT.

50.     On or about April 12, 2018, GREGORY ABBOTT caused a wire in the amount of $50,000 to be sent from a brokerage account in the name of the Abbott Family Foundation to a bank account in the name of the KWF charity.

51.     On or about April 13, 2018, Riddell flew from Tampa to Los Angeles to proctor the ACT exam for the ABBOTTS' daughter and another student at the West Hollywood Test Center.

52.     On or about April 14, 2018, the ABBOTTS' daughter took the ACT at the West Hollywood Test Center. After she completed the exam, Riddell corrected her answers.

53.     On or about April 17, 2018, Singer caused KWF to pay Dvorskiy $20,000, representing a bribe of $10,000 for administering the ACT exam and permitting Riddell to cheat on the exam for the ABBOTTS' daughter and $10,000 for permitting Riddell to cheat on the exam for the other student who took the test the same day.

54.     On or about April 18, 2018, Dvorskiy sent the ACT exams corrected by Riddell from California to ACT, Inc. in Iowa, via Federal Express.

55.     On or about May 14, 2018, Singer caused KWF to pay Riddell $20,000 representing a payment of $10,000 for purporting to proctor the ACT for the ABBOTTS' daughter and $10,000 for the other student who took the test the same day.

56.     The ABBOTTS' daughter received a score of 35 out of a possible 36 on the ACT corrected by Riddell.

57.     On or about June 6, 2018, MARCIA ABBOTT called Singer to inquire, in substance, whether he could arrange for someone to correct her daughter's answers on the SAT subject tests in order to increase her score. Singer replied, "[GREGORY ABBOTT] would have to be willing to pay for it." MARCIA ABBOTT responded, "Yeah, well he can donate, I mean, whatever the donations are."

58.     On or about August 3, 2018, MARCIA ABBOTT called Singer to inquire, in substance, how cheating on the subject tests would work. MARCIA ABBOTT asked: "What is the situation with subject tests? Is it basically the same that happened with the SATs?" Singer replied: "Yeah, it's a little more a little more expensive because now you gotta have somebody which, you gotta make sure that you do well on both of those areas.  It's not like the SATs. They're much harder." During the call, MARCIA ABBOTT asked: "And what would be, the donation be for, if you found someone for October? Because the other one was, what, $50,000?" Singer answered: "It was, I think it was [$]50[,000]. It will be at least [$]75[,000]." MARCIA ABBOTT replied: "Yeah, that's fine."

59.     On or about September 13, 2018, the Abbott Family Foundation made a purported donation of $75,000 to the KWF charity.

60.     In a phone call on or about September 28, 2018, Singer told MARCIA ABBOTT that the SAT subject tests would occur at the West Hollywood Test Center. Singer said: "We'll get 750 and above," to which MARCIA ABBOTT replied: "That's fabulous."

61.     On or about October 2, 2018, Singer mailed Riddell a $10,000 check from Boston, Massachusetts, drawn on a KWF account located in the District of Massachusetts, for purporting to proctor the SAT subject exams for the ABBOTTS' daughter.

62.     On or about October 5, 2018, Singer mailed Dvorskiy a $10,000 check from Boston, Massachusetts, drawn on a KWF account located in the District of Massachusetts, for administering the SAT subject tests and permitting Riddell to cheat on them for the ABBOTTS' daughter.

63.     On or about October 6, 2018, the ABBOTTS' daughter took the SAT subject tests at the West Hollywood Test Center. After she completed the exams, Riddell corrected her answers.

64.     On or about October 8, 2018, Dvorskiy mailed the SAT subject tests corrected by Riddell from California to ETS in New Jersey via UPS.

65.     On or about October 18, 2018, Singer called GREGORY ABBOTT to advise him, in substance, that "it was a good move" for him to pay $75,000 to have Riddell take the SAT subject exams for his daughter. GREGORY ABBOTT asked: "Do you know how she did on her own?" Singer replied: "Do I know how she did on her own? Yeah, I do. She scored in the mid-600s."

66.     The ABBOTTS' daughter received a score of 800 out of a possible 800 on the math subject test and 710 on the literature subject test on the exams corrected by Riddell.

### JANE BUCKINGHAM

67.     In or about 2018, BUCKINGHAM agreed to pay Singer $50,000 to participate in the college entrance exam cheating scheme for her son.

68.     On or about July 2, 2018, BUCKINGHAM submitted a test location change request to ACT, Inc., to allow her son—who had already been granted extended time on the exam—to take the ACT on July 14 and 15, 2018 at the Houston Test Center.

69.     On or about July 12, 2018, BUCKINGHAM informed Singer that her son had developed tonsillitis and that his doctor had advised against allowing him to travel to Houston to take the ACT. BUCKINGHAM asked Singer whether it would be possible for her to obtain a copy

of the ACT exam that she could have her son take at home—so that he would believe he had taken the test—while Riddell took the actual exam on his behalf in Houston.

      70.     Singer contacted Williams, who agreed to BUCKINGHAM's proposed plan.

      71.     On or about July 13, 2018, Singer informed Riddell that BUCKINGHAM's son would not be taking the exam in Houston the following day and that Riddell would therefore have to complete the essay portion of the exam for him. Riddell asked Singer for a handwriting sample from BUCKINGHAM's son so that Riddell could attempt to match his handwriting on the exam.

      72.     That same day, at Singer's request, BUCKINGHAM e-mailed Singer a photograph of her son's handwriting. That evening, Riddell flew from Tampa to Houston to take the ACT on behalf of BUCKINGHAM's son.

      73.     On or about July 14, 2018, Riddell took the ACT in his room at a Houston-area hotel, where Williams had dropped off the exam for him. Riddell earned a total score of 35 out of a possible 36 for BUCKINGHAM's son. After the exam, Riddell returned to Tampa.

      74.     On or about July 14, 2018, Singer caused a $5,000 check to be mailed, via Federal Express, to Williams in Houston.

      75.     On or about July 17, 2018, BUCKINGHAM asked Singer, via e-mail, "[D]o you think we could get a copy of the ACT for [my son] to take? Later that same day, an employee of The Key e-mailed BUCKINGHAM a copy of an ACT practice test.

      76.     On or about July 18, 2018, BUCKINGHAM wired $35,000 to a KWF charitable account as a partial payment toward the agreed-upon fee of $50,000 for Riddell taking the ACT on behalf of BUCKINGHAM's son. BUCKINGHAM advised Singer that she would seek to have her former spouse pay the remaining $15,000 she owed.

77.     On or about July 25, 2018, Singer caused KWF to issue a payment of $10,000 to Riddell for taking the ACT on behalf of BUCKINGHAM's son.

78.     In or about September and October, 2018, the ACT score Riddell obtained on behalf of BUCKINGHAM's son was submitted as part of his applications to various colleges and universities in California, Indiana, Washington, D.C., Texas, and elsewhere.

GORDON CAPLAN

79.     In about 2018, CAPLAN agreed to pay Singer $75,000 to participate in the college entrance exam cheating scheme for his daughter.

80.     In a telephone call on or about June 15, 2018, Singer told CAPLAN: "It's 75,000 to get any test scores you would like to get on the SAT or ACT." CAPLAN replied: "Explain to me how that works." Singer then explained to CAPLAN, in sum and substance, how the college entrance exam cheating scheme worked. Among other things, Singer told CAPLAN: "You get extended time, you gotta get the extended time first. Then you're going to fly to L.A. . . . . So you come to my school, take the test on a Saturday. She'll be in the room for six, six and a half hours taking this test. My proctor would then answer her questions, and by the end of the day, she would leave, and my proctor would make sure she would gets [sic] score that would be equivalent to the number that we need to get." CAPLAN replied: "Okay."

81.     On or about July 21, 2018, CAPLAN and his daughter flew to Los Angeles to meet with a psychologist recommended by Singer in order to obtain the medical documentation required to receive extended time on the ACT exam.

82.     On or about November 6, 2018, ACT, Inc. notified CAPLAN's daughter that she had been approved for extended time on the ACT exam.

83.     In a telephone call on or about November 8, 2018, CAPLAN told Singer that his daughter had received extended time on the ACT exam. CAPLAN asked Singer, in sum and

14

substance, whether anyone involved in the college entrance cheating scheme had ever been caught. Singer replied: "Nobody. We've done this for four or five years and had probably 20-plus people do it."

84.    In the same call, Singer instructed CAPLAN to wire SINGER $25,000 if he wanted to ensure Ridell's and Dvorskiy's availability to participate in the cheating scheme.

85.    On or about November 13, 2018, CAPLAN wired $25,000 to a bank account in Boston, Massachusetts in the name of the KWF charity.

86.    On or about November 15, 2018, CAPLAN e-mailed ACT, Inc.: "I am the father of [daughter's name]. [My daughter] was approved for special testing accommodations and location. We would like to change the location to [the West Hollywood Test Center]."

87.    On or about November 15, 2018, CAPLAN and Singer discussed the score Riddell would obtain for CAPLAN's daughter on the ACT exam. CAPLAN said: "I'm thinking 30, 31 is all we need to do here."

88.    On or about November 29, 2018, Singer mailed $10,000 checks from the District of Massachusetts to Riddell in Florida and to Dvorskiy in California.

89.    On or about December 7, 2018, Riddell flew from Tampa to Los Angeles to proctor the ACT exam for CAPLAN's daughter on December 8, 2018. After CAPLAN's daughter completed the exam, Riddell corrected her answers.

90.    On or about December 10, 2018, Dvorskiy mailed the ACT exam corrected by Riddell from California to Iowa via Federal Express.

91.    On or about December 20, 2018, CAPLAN wired an additional $50,000 into the KWF bank account in Boston.

92.     CAPLAN's daughter received a score of 32 out of a possible 36 on the ACT exam corrected by Riddell.

## ROBERT FLAXMAN

93.     In or about 2016, FLAXMAN agreed to pay Singer $75,000 to participate in the college entrance exam scheme for his daughter.

94.     In or about April 2016, FLAXMAN's daughter took the ACT and received a score of 20 out of a possible 36.

95.     On or about September 12, 2016, FLAXMAN e-mailed Singer that his daughter took the "ACT this weekend and thought she did better than the last time. She actually finished the exam." FLAXMAN's daughter received a score of 24 on the September test.

96.     On or about October 4, 2016, Singer e-mailed FLAXMAN that his contact at ACT "has the paperwork and will put [your daughter] into [the Houston Test Center] for Oct." FLAXMAN replied: "Ok. I will need details soon. Address. Who and where to check in and what instructions we need to give [my daughter] to use at the test."

97.     Singer contacted Fox, who arranged with Williams to permit Riddell to purport to proctor the test for FLAXMAN's daughter and another student at the Houston Test Center.

98.     On or about October 6, 2016, Singer e-mailed FLAXMAN the address of the Houston Test Center and contact information for Williams.

99.     On or about October 15, 2016, Singer directed Masera to send invoices to FLAXMAN and another client in the amount of $75,000 each. Singer further instructed Masera to send $50,000 to Fox and $20,000 to Riddell.

100.    On or about October 20, 2016, at FLAXMAN's direction, his company wired $75,000 to KWF.

16

101.    On or about October 22, 2016, FLAXMAN's daughter and the child of another client of Singer both took the ACT at the Houston Test Center with Riddell.  Riddell assisted FLAXMAN's daughter and the other student to answer questions on the exam, and instructed them to answer different questions incorrectly so that they would not have the same incorrect answers on their tests, and the ACT would therefore not suspect cheating.

102.    FLAXMAN's daughter received a score of 28 on the ACT exam corrected by Riddell.

103.    On or about January 27, 2017, FLAXMAN's daughter's fraudulent ACT score was transmitted to various colleges in California and elsewhere.

FELICITY HUFFMAN

104.    In or about 2017 and 2018, HUFFMAN agreed to pay Singer an amount (at least $15,000) to participate in the college entrance exam scheme for her oldest daughter.

105.    On or about August 28, 2017, HUFFMAN e-mailed a psychologist: "I think it would be really helpful for [my oldest daughter] to get 100% time on her testing . . . so that it is in place when we need to do the College Board thing next year."

106.    On or about October 16, 2017, HUFFMAN received an e-mail from the College Board advising that her older daughter had been approved for 100 percent extended time.

107.    On or about October 17, 2017, HUFFMAN forwarded the College Board's accommodation approval e-mail to Singer and a counselor at HUFFMAN's daughter's high school with the note, "Hurray! She got it. What's the next step?"

108.    On or about October 18, 2017, a counselor at HUFFMAN's older daughter's high school e-mailed HUFFMAN: "Now you will register [your daughter] for the December 3rd SAT . . . Collegeboard [sic] considers double time a school based exam, so [our high school] is the test center. I will proctor test on Dec 4th & 5th and that's the process in nutshell."

17

109.    On or about October 20, 2017, HUFFMAN forwarded the October 18th e-mail from the counselor to Singer with the note: "Ruh Ro! Looks like [my daughter's high school] wants to provide own proctor." Singer responded: "We will speak about it."

110.    On or about October 26, 2017, Dvorskiy completed paperwork requesting that HUFFMAN's daughter's SAT exam be moved from her high school to the West Hollywood Test Center.

111.    On or about October 31, 2017, HUFFMAN e-mailed Singer that she would tell a counselor at her older daughter's high school: "we will take it [*i.e.*, the SAT] on Dec. 2nd and 3rd – so [her older daughter] won't miss school – which is good because it's final prep – I assume."

112.    On or about December 1, 2017, Riddell flew from Tampa to Los Angeles to proctor HUFFMAN's daughter's exam on December 2, 2017.   After HUFFMAN's daughter completed the exam and left the test center, Riddell corrected her answers.

113.    HUFFMAN's daughter received a score of 1420 on the SAT, an improvement of approximately 400 points over her PSAT, which she took without Riddell one year earlier.

114.    On or about December 19, 2017, Singer caused KWF to pay Dvorskiy $40,000 for administering the SAT to HUFFMAN's daughter and three other students.

115.    On or about December 27, 2017, Singer caused KWF to pay Riddell $35,000 for purporting to proctor the exam for HUFFMAN's daughter and for several other of Singer's clients.

116.    On or about February 27, 2018, HUFFMAN made a purported contribution of $15,000 to KWF.

117.    On or about March 21, 2018, Masera sent HUFFMAN and her spouse a letter thanking them for the purported donation and falsely stating that it would "allow us to move

18

forward with our plans to provide educational and self-enrichment programs to disadvantaged youth." The letter falsely stated that "no goods or services were exchanged" for the $15,000.

### AGUSTIN FRANCISCO HUNEEUS

118.   In or about 2017 and 2018, HUNEEUS agreed with Singer to pay $300,000 to participate in both the college entrance exam scheme and college recruitment scheme for his daughter.

119.   On or about May 25, 2017, Singer directed HUNEEUS and a psychologist selected by Singer to "[p]lease connect." In that e-mail, Singer also noted that HUNEEUS's daughter "needs testing for 100 percent time with multiple days."

120.   In or about August 2017, a psychologist provided HUNEEUS's daughter with documentation recommending that she receive extended time on the SAT.

121.   On or about October 7, 2017, the College Board granted HUNEEUS's daughter extended time to take the exam over successive days.

122.   On or about January 22, 2018, HUNEEUS forwarded Singer an e-mail he had received from an employee at his daughter's high school, indicating that she planned to proctor his daughter's test at the school on March 10th and March 11th. HUNEEUS wrote, "Here is the email." Singer replied, "You can tell her you are going to be out of town and have found a location to provide the test so [your daughter] does not have to miss school. The school is [the West Hollywood Test Center] for your use."

123.   On or about February 16, 2018, an employee at the high school wrote to HUNEEUS that HUNEEUS's executive assistant "had mentioned trying to arrange for [his daughter] to take the exam in L.A. If that is the case, please make sure the [College] Board knows where to send the exam."

124.     On or about February 16, 2018, Dvorskiy e-mailed Singer confirmation that the College Board had shipped SAT materials for HUNEEUS's daughter to the West Hollywood Test Center. Singer then forwarded the confirmation to HUNEEUS.

125.     On or about March 9, 2018, Riddell flew from Tampa to Los Angeles to proctor HUNEEUS's daughter's exam on March 10, 2018.

126.     On or about March 10, 2018, HUNEEUS brought his daughter to the West Hollywood Test Center for the exam. Riddell corrected answers on HUNEEUS's daughter's test.

127.     On or about March 12, 2018, Dvorskiy mailed the SAT exam corrected by Riddell from California to ETS in New Jersey via UPS.

128.     On or about April 3, 2018, HUNEEUS wired $50,000 as a purported charitable contribution to KWF. Singer, in turn, paid Dvorskiy and Riddell $10,000 each.

129.     HUNEEUS's daughter received a score of 1380 out of a possible 1600 on the SAT corrected by Riddell.

130.     On or about August 30, 2018, HUNEEUS and Singer discussed the college entrance exam scheme. HUNEEUS told Singer "I know your system well," and said, "if you had wanted to, I mean [my daughter's] score could have been 1550, right?" Singer responded, "No. 'Cause I would have got investigated for sure based on her grades."

131.     In the same call, HUNEEUS and Singer also discussed the college recruitment scheme. HUNEEUS asked Singer to "walk me through the whole, kinda, water polo thing again and how it works." Singer then described that they would put together "water polo profile" for HUNEEUS's daughter and that Heinel would present HUNEEUS's daughter to USC's subcommittee for athletic admissions. Singer added that HUNEEUS would pay $50,000 to Heinel for securing the conditional admission of his daughter and $200,000 to the KWF after USC sent

20

the official admissions packet in March 2019. As to this second payment, HUNEEUS inquired

whether "all of those funds go to USC, or do some go to stay in your foundation?" Singer replied,

"No, they go to USC in different ways," including to Jovan Vavic, the USC water polo coach,

"'Cause he's the guy giving up the spot." HUNEEUS also told Singer "you understand that [my

daughter] is not worthy to be on that team."

132.    On or about September 18, 2018, shortly before Heinel intended to present

HUNEEUS's daughter to the admissions subcommittee, Singer asked HUNEEUS to provide a

photo of his daughter playing water polo. HUNEEUS agreed to prove the photo.

133.    On or about September 20, 2018, Singer sent Heinel an e-mail that included

HUNEEUS's daughter's high school transcripts, her fraudulent SAT score, and a fabricated

athletic profile that falsely identified her as a "3-year Varsity Letter winner" in water polo and

"Team MVP 2017," along with a photograph of someone other than HUNEEUS's daughter

playing water polo.

134.    On or about September 22, 2018, Singer told HUNEEUS on a telephone call that

since his daughter had not sent a photograph in time, he had to use a photograph of someone else

in the profile. HUNEEUS responded, "Okay, does that mean her chances change in any way?"

Singer responded it meant HUNEEUS's daughter would have to be submitted at a later date to the

subcommittee for athletic admissions.

135.    On or about November 2, 2018, using a falsified profile that depicted her as a

competitive water polo player, Heinel presented HUNEEUS's daughter to the USC subcommittee

for athletic admissions.

136.    On or about November 7, 2018, Heinel e-mailed Singer a conditional acceptance

letter for HUNEEUS's daughter stating that she was being admitted to USC because "[y]our

records indicate that you have the potential to make a significant contribution to the intercollegiate athletic program." Singer forwarded the letter to HUNEEUS and requested that he "[p]lease send 50K check . . . made payable to USC Women's Athletic Board . . . to USC Women's Athletic c/o Donna Heinel."

137.    On or about November 19, 2018, HUNEEUS caused his executive assistant to send a $50,000 check to Heinel by FedEx, payable to "USC Women's Athletics Board" with the memo line referencing his daughter.

## MARJORIE KLAPPER

138.    In or about 2017, KLAPPER agreed to pay Singer $15,000 to participate in the college entrance exam cheating scheme for her son.

139.    On or about March 1, 2017, KLAPPER e-mailed Singer that she had learned from another client of Singer's that the other client's daughter was planning to take the ACT in Los Angeles. KLAPPER asked if her son could do so as well. Singer replied: "it is not a definite as there [is] a financial consideration to take it there. They will only do with a donation."

140.    On or about June 10, 2017, KLAPPER forwarded to Singer a letter from the College Board that granted her son 50 percent extra time. KLAPPER wrote: "Another failed attempt at 100%. We have it for ACT. What should we do? Do these accommodations mean alternate location? Still debating our conversations too." Singer replied: "As long as you have ACT with 100 percent time we can take the test at an alternate site."

141.    On or about September 13, 2017, KLAPPER forwarded ACT registration instructions for her son to Singer, who forwarded them to Dvorskiy. Dvorskiy, in turn, notified ACT, Inc. that KLAPPER's son would take the ACT on October 28, 2017 at the West Hollywood Test Center.

142.    On or about October 27, 2017, Riddell flew from Tampa to Los Angeles to proctor the ACT exam for KLAPPER's son at the West Hollywood Test Center on October 28, 2017. After KLAPPER's son completed the exam, Riddell corrected his answers.

143.    On or about October 29, 2017, Singer directed Masera in an e-mail to invoice KLAPPER $15,000 through the KWF.

144.    On or about November 1, 2017, KWF paid Riddell $18,000 for proctoring the ACT exam for KLAPPER's son and another student.

145.    On or about November 2, 2017, Dvorskiy mailed the ACT exam corrected by Riddell from California to Iowa via Federal Express.

146.    On or about November 2 and 3, 2017, KLAPPER made a purported charitable contribution totaling $15,000 to KWF.

147.    On or about November 6, 2017, KWF paid Dvorskiy $13,000 for administering the ACT exam for KLAPPER's son and another student.

148.    KLAPPER's son received a score of 30 out of a possible 36 on the ACT exam corrected by Riddell.

149.    On or about November 20, 2017, KLAPPER e-mailed a copy of her son's ACT score report to Singer, noting: "Omg. I guess he's not testing again." Singer replied: Yep he is brilliant."

150.    In or about 2017 and 2018, the ACT score Riddell obtained on behalf of KLAPPER's son was submitted as part of his applications to various colleges and universities in Arizona, California, Colorado, and elsewhere.

### PETER JAN "P.J." SARTORIO

151.    In or about 2017, SARTORIO agreed to pay Singer $15,000 to participate in the college entrance exam cheating scheme for his daughter.

152.    On or about May 8, 2017, ACT, Inc. notified SARTORIO's daughter and spouse via e-mail that SARTORIO's daughter had been approved for extended time on the ACT exam. SARTORIO's spouse forwarded the notification to SARTORIO and Singer, noting, "Yay, she was approved!"

153.    On or about May 18, 2017, Singer forwarded SARTORIO's daughter's ACT information to Dvorskiy, writing, "New student." Dvorskiy responded by attaching a completed form requesting that SARTORIO's daughter be permitted to take the ACT at the West Hollywood Test Center instead of at her own high school. ACT, Inc. authorized the move on or about May 31, 2017.

154.    On or about June 9, 2017, Riddell flew from Tampa to Los Angeles to proctor the ACT exam for SARTORIO's daughter and another Singer client on June 10, 2017. After SARTORIO's daughter completed the exam and left the center, Riddell corrected her answers.

155.    SARTORIO'S daughter received a score of 27 on the ACT corrected for her, which placed her in approximately the 86th percentile.

156.    On or about June 5, 2017, Singer caused KWF to pay Dvorskiy $40,000 for administering the ACT to SARTORIO's daughter and various other Singer clients.

157.    On or about June 12, 2017, Singer caused KWF to pay Riddell $15,600 for purporting to proctor the ACT for SARTORIO's daughter and another Singer client.

158.    Shortly thereafter, SARTORIO paid Singer $15,000 in cash.

24

159.    In or about November and December, 2017, the ACT score Riddell obtained on behalf of SARTORIO's daughter was submitted as part of her applications to various colleges and universities in California, Florida, and elsewhere.

### STEPHEN SEMPREVIVO

160.    In or about 2015 and 2016, SEMPREVIVO agreed to pay Singer $400,000 to participate in the college recruitment scheme for his son in order to facilitate his admission to Georgetown.

161.    On or about August 19, 2015, Singer e-mailed SEMPREVIVO and his son, instructing them, "[P]lease send this note and a PDF of transcripts and test scores to Gordie Ernst Mens' Tennis at Georgetown U from your email-then let me know it is done." The note drafted by Singer included fabricated representations about SEMPREVIVO's son's purported tennis experience and prior contacts with Ernst. SEMPREVIVO's son e-mailed the note to Ernst later that same day, along with his high school transcript and SAT scores.

162.    The following day, Ernst forwarded the e-mail to a member of the Georgetown admissions staff. Ernst then e-mailed the admissions officer to "confirm" that he had used three of his allocated admissions "spots"—one for SEMPREVIVO's son and, unbeknownst to the admissions officer, two for other clients of Singer.

163.    On or about October 11, 2015, Singer e-mailed SEMPREVIVO a final "activity" essay for inclusion in SEMPREVIVO's son's Georgetown application. The essay included fabricated representations about SEMPREVIVO's son's purported tennis experience.

164.    On or about that same day, SEMPREVIVO's son's application was submitted to Georgetown. The application included the above-referenced essay, as well as other fabricated representations about SEMPREVIVO's son's purported tennis experience.

25

165.    On or about November 6, 2015, Georgetown sent SEMPREVIVO's son a letter noting that "[t]he Committee on Admissions has conducted an initial review of your application to the Class of 2020 at the request of Mr. Gordie Ernst, Tennis Coach" and that "the Committee has ranked your admission as 'likely.'" The letter explained that candidates rated "likely" have a greater than 95 percent chance of being admitted to Georgetown and that SEMPREVIVO's son would receive a final decision by April 1, 2016.

166.    On or about April 22, 2016, after SEMPREVIVO's son was granted formal admission to Georgetown, a KWF employee e-mailed SEMPREVIVO an invoice in the amount of $400,000 for his purported "Private Contribution" to KWF.

167.    On or about April 28, 2016, the SEMPREVIVO Family Trust issued a check to KWF in the amount of $400,000.

168.    Between on or about September 11, 2015 and November 30, 2016, Singer caused KWF to issue checks to Ernst totaling $950,000, representing payments for the purported recruitment of SEMPREVIVO's son and the children of other clients of Singer. Typically, Singer caused the checks to be mailed to Ernst via U.S. Mail.

DEVIN SLOANE

169.    In or about 2017 and 2018, SLOANE agreed with Singer to pay $250,000 to participate in the college recruitment scheme for his oldest son.

170.    On or about January 4, 2017, SLOANE e-mailed Singer: "Should we start thinking of a short list of schools to tour now?" Singer responded, in substance, that a short list typically required "SAT and Subject test scores," but SLOANE could begin to create a list if "you are ready to commit to the notion of the financial side door. Your thoughts?" SLOANE replied three minutes later that he and his son would "come up with schools to visit."

26

171.    On or about June 5, 2017 and June 16, 2017, SLOANE purchased water polo gear, including a ball and cap, from Amazon.com.

172.    On or about June 27, 2017, SLOANE e-mailed Singer a photograph of his son purporting to play water polo—using the items SLOANE purchased from Amazon.com a few weeks earlier—with his right arm and upper torso exposed above the water line. In the e-mail, SLOANE asked: "Does this work?" Singer responded: "Yes but a little high out of the water- no one gets that high."

173.    On or about June 28, 2017, SLOANE e-mailed Singer another photograph of his son, in which his son appeared to be lower in the water, with his torso and arm now mostly submerged. In the e-mail, SLOANE wrote: "Hope this works. . . ." Singer replied: "perfect."

174.    On or about July 16, 2017, Singer e-mailed SLOANE to request biographical details for SLOANE's son's water polo profile. In the email, Singer indicated that the profile would falsely present SLOANE's son as a "Perimeter Player" who played for the "Italian Junior National Team" and the "LA Water Polo" team. The following day, SLOANE replied with the personal information for the profile.

175.    In or about November 2017, Heinel presented SLOANE's son to the USC subcommittee for athletic admissions using a fabricated athletic profile that falsely identified him has playing in the "European Water Polo Championships" for the "Italian Youth National Team" and a "Starting Attach Player-3 year[s]" for the LA Water Polo Club.

176.    On or about November 26, 2017, Heinel e-mailed Singer a conditional acceptance letter for SLOANE's son, indicating that his admission was premised upon "records [that] indicate that you have the potential to make a significant contribution to the intercollegiate athletic program."

27

177.    On or about November 29, 2017, Singer e-mailed SLOANE: "Devin can you send a 50k check to USC and the address is below. Additionally the rest of the 200K will be paid to our foundation a 501 3c [sic] after [your son] receives his final letter in March."

178.    The same day, on or about November 29, 2017, SLOANE sent Heinel, by Federal Express, a $50,000 check payable to "USC Women[']s Athletics."

179.    On or about January 29, 2018, one of Singer's employees e-mailed SLOANE an invoice from KWF in the amount of $200,000 and wrote: "Thank you for your generous donation."

180.    On or about March 22, 2018, USC mailed SLOANE's son a formal acceptance letter.

181.    On or about April 11, 2018, SLOANE wired $200,000 to KWF.

Other Co-Conspirators

182.    In addition to the exams Singer paid Riddell to take for the defendants' children, as set forth above, Singer likewise paid Riddell to cheat on the SAT and ACT for the children of other co-conspirators known and unknown to the United States Attorney and, in many of those instances, bribed exam administrators Dvorskiy and Williams to permit Riddell to do so. As examples:

a.  In or about October 2011, Riddell provided Student 1, a high school student in Florida, with answers to her SAT subject tests while purporting to proctor Student 1's exams.

b.  On or about October 3, 2015, Riddell secretly corrected SAT answers for Student 2, a high school student in California, who later submitted those scores to Boston University, Boston College, and Northeastern University, all of which are located in the District of Massachusetts.

      c.   On or about December 9, 2017, Riddell corrected SAT answers for Student 3, a high school student in California, who later submitted those scores to Northeastern University.

183.    Singer likewise bribed athletic coaches and university administrators on behalf of other co-conspirators known and unknown to the United States Attorney to designate the children of those co-conspirators as athletic recruits. As an example:

      a.   Between 2012 and 2018, Singer paid Ernst bribes falsely labeled as "consulting" fees totaling more than $2.7 million.

      b.   Singer typically made the payments to Ernst from one of the KWF charitable accounts and sent them to Ernst via U.S. Mail, including in at least one instance to Ernst's residence in Falmouth, Massachusetts.

      c.   In exchange for the bribes, Ernst designated at least 12 applicants as recruits for the Georgetown tennis team, including some who did not play tennis competitively, thereby facilitating their admission to Georgetown.

COUNT ONE
Conspiracy to Commit Mail Fraud
and Honest Services Mail Fraud
(18 U.S.C. § 1349)

The United States Attorney charges:

184.    The United States Attorney re-alleges and incorporates by reference paragraphs 1-183 of this Information.

185.    From in or about 2011, and continuing through in or about February 2019, in the District of Massachusetts and elsewhere, the defendants,

| | |
|---|---|
| (1) | GREGORY ABBOTT, |
| (2) | MARCIA ABBOTT, |
| (3) | JANE BUCKINGHAM, |
| (4) | GORDON CAPLAN |
| (5) | ROBERT FLAXMAN, |
| (6) | FELICITY HUFFMAN, |
| (7) | AGUSTIN FRANCISCO HUNEEUS, |
| (8) | MARJORIE KLAPPER, |
| (9) | PETER JAN "P.J." SARTORIO, |
| (10) | STEPHEN SEMPREVIVO, and |
| (11) | DEVIN SLOANE, |

conspired with others known and unknown to the United States Attorney to commit mail fraud and honest services mail fraud, that is, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property, to wit, ACT and SAT tests and test scores, and admission to the Universities, by means of materially false and fraudulent pretenses, representations, and promises, and to defraud and deprive, variously, ACT, Inc., the College Board, and the Universities, of their right to the honest and faithful services of their test administrators, athletic coaches and university administrators, through bribes and kickbacks, did, for the purpose of executing and attempting to execute the scheme, deposit and cause to be

deposited any matter and thing whatever to be sent and delivered by any private and commercial

interstate carrier, in violation of Title 18, United States Code, Sections 1341 and 1346.

All in violation of Title 18, United States Code, Section 1349.

<table>
<tr><td></td><td>ANDREW E. LELLING<br>UNITED STATES ATTORNEY</td></tr>
<tr><td>By:</td><td><br>ERIC S. ROSEN<br>JUSTIN D. O'CONNELL<br>KRISTEN A. KEARNEY<br>LESLIE A. WRIGHT<br>Assistant United States Attorneys</td></tr>
</table>

Date: April 8, 2019

31

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| AGUSTIN FRANCISCO HUNEEUS | Case Number: **1: 19 CR 10117   - 7   - IT** |
| | USM Number:  25453-111 |
| | Jeremy M. Sternberg, William P. Keane, John A. Canale |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)      1

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1349, 1341, and 1346 | Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud | 02/28/19 | 1 |

The defendant is sentenced as provided in pages 2 through _____7_____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

10/4/2019

Date of Imposition of Judgment

*[Signature]*

Signature of Judge

The Honorable Indira Talwani

U.S. District Judge

Name and Title of Judge

*10/7/2019*

Date

Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts

By: _____
        Deputy Clerk

Date: 10/13/2020

AO 245B (Rev. 11/16)  Judgment in Criminal Case
        Sheet 2 — Imprisonment

DEFENDANT: AGUSTIN FRANCISCO HUNEEUS

CASE NUMBER:   **1: 19  CR  10117  - 7  - IT**

Judgment — Page   **2**   of   **7**

# IMPRISONMENT

     The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:     5   month(s)

☑  The court makes the following recommendations to the Bureau of Prisons:

The Court recommends Defendant be designated to a facility commensurate with his security level within 200 miles of San Francisco, CA.

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at  _____  ☐ a.m.  ☐ p.m.   on   _____ .

    ☐  as notified by the United States Marshal.

☑  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☑  before 2 p.m. on   11/4/2019_____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on   _____  to  _____

a _____ , with a certified copy of this judgment.

                                _____
                                        UNITED STATES MARSHAL

                  By  _____
                                      DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

DEFENDANT:  AGUSTIN FRANCISCO HUNEEUS
CASE NUMBER:  1: 19 CR 10117  - 7   - IT

Judgment—Page ___3___ of ___7___

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :       2   year(s)

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

    ☑ The above drug testing condition is suspended, based on the court's determination that you

    pose a low risk of future substance abuse. *(check if applicable)*
4.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

DEFENDANT:  AGUSTIN FRANCISCO HUNEEUS
CASE NUMBER:   1: 19 CR 10117 - 7 - IT

Judgment—Page __4__ of __7__

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

AO 245B(Rev. 11/16)    Judgment in a Criminal Case
                       Sheet 3D — Supervised Release
_____

DEFENDANT: AGUSTIN FRANCISCO HUNEEUS                          Judgment—Page ___5___ of ___7___
CASE NUMBER: 1: 19 CR 10117 - 7 - IT

## SPECIAL CONDITIONS OF SUPERVISION

1. You are prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

2. You must provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office while any financial obligations remain outstanding.

3. You must complete 500 hours of community service at an agency approved by the Probation Office that directly serves students or their families.

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

| | |
|---|---|
| DEFENDANT: AGUSTIN FRANCISCO HUNEEUS | Judgment — Page   6   of   7   |
| CASE NUMBER:   1: 19 CR 10117 - 7 - IT | |

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ 100,000.00 | $ |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $       0.00 | $       0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
              Sheet 6 — Schedule of Payments

DEFENDANT: AGUSTIN FRANCISCO HUNEEUS

CASE NUMBER:    1: 19 CR 10117  - 7  - IT

Judgment — Page ___7___ of ___7___

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☑  Lump sum payment of $ __100.00__   due immediately, balance due

      ☐  not later than _____ , or
      ☑  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☑ F below; or

B  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
      _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
      term of supervision; or

E  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
      imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☑  Special instructions regarding the payment of criminal monetary penalties:

      Payment to be made within 30 days unless Defendant seeks, and the court approves, a repayment schedule.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

      Defendant and Co-Defendant Names and Case Numbers *(including defendant number),* Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
Sheet 1

(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT
## District of Massachusetts

UNITED STATES OF AMERICA
v.
Agustin Francisco Huneeus

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number: **1: 19 CR 10117 - 7 - IT**

USM Number: 25453-111

Jeremy M. Sternberg, William P. Keane, John A. Canale
Defendant's Attorney

**Date of Original Judgment:** 10/7/2019
*(Or Date of Last Amended Judgment)*

**Reason for Amendment:**
☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))
☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))
☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))
☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☑ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))
☑ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))
☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))
☐ Direct Motion to District Court Pursuant   ☐ 28 U.S.C. § 2255 or
☐ 18 U.S.C. § 3559(c)(7)
☐ Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**
☑ pleaded guilty to count(s)   1
☐ pleaded nolo contendere to count(s)
which was accepted by the court.
☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1349, 1341, and 1346 | Conspiracy to Commit Mail Fraud and Honest Services Mail Fraud | 02/28/19 | 1 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)
☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

3/17/2020
Date of Imposition of Judgment

*Indira Talwani*
Signature of Judge   Indira Talwani, U.S. District Judge

Name and Title of Judge

3/17/2020
Date

Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts
By: _____
Deputy Clerk

Date: 10/13/2020

AO 245C (Rev. 02/18)  Amended Judgment in a Criminal Case
                      Sheet 2 — Imprisonment

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:  Agustin Francisco Huneeus

CASE NUMBER: 1: 19 CR 10117  - 7  - IT

Judgment — Page ___2___ of ___7___

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

Time served.

☐  The court makes the following recommendations to the Bureau of Prisons:

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____  ☐  a.m.  ☐  p.m.  on _____ .

    ☑  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____  to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
                       Sheet 3 — Supervised Release

(NOTE: Identify Changes with Asterisks (*))

Judgment—Page  3  of  7

DEFENDANT:  Agustin Francisco Huneeus
CASE NUMBER: 1: 19 CR 10117  - 7  - IT

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

2 years.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☑ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
               Sheet 3A — Supervised Release

DEFENDANT:   Agustin Francisco Huneeus

CASE NUMBER: 1: 19 CR 10117  - 7   - IT

Judgment—Page ___4___ of ___7___

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature      _____      Date    _____

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
Sheet 3D — Supervised Release

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:   Agustin Francisco Huneeus

CASE NUMBER:   **1: 19 CR 10117   - 7    - IT**

Judgment—Page   5   of   7

## SPECIAL CONDITIONS OF SUPERVISION

1. You are prohibited from incurring new credit charges or opening additional lines of credit without the approval of the Probation Office while any financial obligations remain outstanding.

2. You must provide the Probation Office access to any requested financial information, which may be shared with the Financial Litigation Unit of the U.S. Attorney's Office while any financial obligations remain outstanding.

3. You must complete 500 hours of community service at an agency approved by the Probation Office that directly serves students or their families.

4. You shall remain at your place of residence for the first fourteen days of supervised release, and may only leave your residence for medical appointments.

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:   Agustin Francisco Huneeus

CASE NUMBER: 1: 19 CR 10117 - 7 - IT

Judgment — Page __6__ of __7__

# CRIMINAL MONETARY PENALTIES

The defendant must pay the following total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ 100,000.00 | $ |

☐   The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐   The defendant shall make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| **TOTALS** | $ 0.00 | $ 0.00 | |

☐   Restitution amount ordered pursuant to plea agreement   $ _____

☐   The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐   The court determined that the defendant does not have the ability to pay interest, and it is ordered that:

   ☐   the interest requirement is waived for   ☐ fine   ☐ restitution.

   ☐   the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245C (Rev. 02/18)   Amended Judgment in a Criminal Case
              Sheet 6 — Schedule of Payments

(NOTE: Identify Changes with Asterisks (*))

DEFENDANT:   Agustin Francisco Huneeus

Judgment — Page    7    of     7

CASE NUMBER: **1: 19 CR 10117 - 7 - IT**

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

**A** ☑ Lump sum payment of $ 100.00_____ due immediately, balance due

         ☐ not later than _____ , or
         ☑ in accordance with ☐ C, ☐ D, ☐ E, or ☑ F below; or

**B** ☐ Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D** ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
       _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
       term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within   30_____ (e.g., 30 or 60 days) after release from
       imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:

       The United States has acknowledged satisfaction of the assessment and fine imposed. [602]

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

       Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
       and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine
interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

VICTIM

# United States District Court
## District of Massachusetts (Boston)
### CRIMINAL DOCKET FOR CASE #: 1:19-cr-10117-IT-7

Case title: USA v. Abbott et al
Magistrate judge case number: 1:19-mj-06087-MPK

Date Filed: 04/08/2019
Date Terminated: 10/07/2019

Assigned to: Judge Indira Talwani

### Defendant (7)

**Agustin Francisco Huneeus**
*TERMINATED: 10/07/2019*
*also known as*
Agustin Huneeus, Jr.
*TERMINATED: 10/07/2019*

represented by **Jeremy M. Sternberg**
Holland & Knight (B)
10 St. James Avenue
11th Flr.
Boston, MA 02116
617-854-1476
Email: jeremy.sternberg@hklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**William P. Keane**
Farella Braun & Martel, LLP
235 Montgomery St
San Francisco, CA 94104
415-954-4908
Fax: 415-954-4480
Email: wkeane@fbm.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
Designation: Retained

**John A. Canale**
Holland & Knight (B)
10 St. James Avenue
11th Flr.
Boston, MA 02116
617-619-9228
Fax: 617-523-6850
Email: john.canale@hklaw.com
*ATTORNEY TO BE NOTICED*



Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts

By: _____
Deputy Clerk

Date: 10/13/2020

### Pending Counts

### Disposition

ORIGINAL JUDGMENT: Defendant Agustin Francisco Huneeus is committed to the custody of the BOP to be imprisoned for a total term of 5 months. Upon release from imprisonment, the Defendant shall be placed on supervised release with standard and special conditions for a term of 2 years, with 500 hours of community service, $100,000.00 fine, $100 total special assessment fee. No restitution. AMENDED JUDGMENT: Defendant Agustin Francisco Huneeus is committed to a term of Time Served. Upon release from imprisonment, the Defendant shall be placed on supervised release with standard and special conditions for a term of 2 years, with 500 hours of community service, $100,000.00 fine, $100 total special assessment fee. No restitution.

18:1349- CONSPIRACY TO COMMIT MAIL FRAUD AND HONEST SERVICES MAIL FRAUD
(1)

**Highest Offense Level (Opening)**

Felony

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

18:1349 - Conspiracy to commit mail fraud and honest services mail fraud.

**Disposition**

---

**Plaintiff**

**USA**

represented by **Eric S. Rosen**
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
(617) 748-3412
Email: eric.rosen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Justin D. O'Connell**
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3100
Email: justin.o'connell@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Kristen A. Kearney**
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3204
Email: kristen.kearney@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Leslie Wright**
US Attorney's Office - MA
J. Joseph Moakley U.S. Courthouse
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3367
Email: leslie.wright@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant US Attorney*

**Carol E. Head**
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3100
Email: Carol.Head@usdoj.gov
*ATTORNEY TO BE NOTICED*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/11/2019 | <u>1</u> | MOTION to Seal Case as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, Diane Blake, Todd Blake, Jane Buckingham, Gordon Caplan, I-Hsin Chen, Amy Colburn, Gregory Colburn, Robert Flaxman, Mossimo Giannulli, Elizabeth |

| | | |
|---|---|---|
| | | Henriquez, Manuel Henriquez, Douglas Hodge, Felicity Huffman, Agustin Huneeus, Jr, Bruce Isackson, Davina Isackson, Michelle Janavs, Elisabeth Kimmel, Marjorie Klapper, Lori Loughlin, Toby MacFarlane, William McGlashan, Jr, Marci Palatella, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh, Robert Zangrillo by USA. (Alves-Baptista, Antonia) [1:19-mj-06087-MPK] (Entered: 03/11/2019) |
| 03/11/2019 | 2 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered granting 1 Motion to Seal Case as to Gregory Abbott (1), Marcia Abbott (2), Gamal Abdelaziz (3), Diane Blake (4), Todd Blake (5), Jane Buckingham (6), Gordon Caplan (7), I-Hsin Chen (8), Amy Colburn (9), Gregory Colburn (10), Robert Flaxman (11), Mossimo Giannulli (12), Elizabeth Henriquez (13), Manuel Henriquez (14), Douglas Hodge (15), Felicity Huffman (16), Agustin Huneeus Jr. (17), Bruce Isackson (18), Davina Isackson (19), Michelle Janavs (20), Elisabeth Kimmel (21), Marjorie Klapper (22), Lori Loughlin (23), Toby MacFarlane (24), William McGlashan Jr. (25), Marci Palatella (26), Peter Jan Sartorio (27), Stephen Semprevivo (28), Devin Sloane (29), John Wilson (30), Homayoun Zadeh (31), Robert Zangrillo (32) (Alves-Baptista, Antonia) [1:19-mj-06087-MPK] (Entered: 03/11/2019) |
| 03/11/2019 | 3 | SEALED COMPLAINT as to Gregory Abbott (1), Marcia Abbott (2), Gamal Abdelaziz (3), Diane Blake (4), Todd Blake (5), Jane Buckingham (6), Gordon Caplan (7), I-Hsin Chen (8), Amy Colburn (9), Gregory Colburn (10), Robert Flaxman (11), Mossimo Giannulli (12), Elizabeth Henriquez (13), Manuel Henriquez (14), Douglas Hodge (15), Felicity Huffman (16), Agustin Huneeus, Jr (17), Bruce Isackson (18), Davina Isackson (19), Michelle Janavs (20), Elisabeth Kimmel (21), Marjorie Klapper (22), Lori Loughlin (23), Toby MacFarlane (24), William McGlashan, Jr (25), Marci Palatella (26), Peter Jan Sartorio (27), Stephen Semprevivo (28), Devin Sloane (29), John Wilson (30), Homayoun Zadeh (31), Robert Zangrillo (32). (Attachments: # 1 JS45, # 2 Affidavit pgs 1-46, # 3 Affidavit pgs 47-121, # 4 Affidavit pgs 122-173, # 5 Affidavit 174-204)(Alves-Baptista, Antonia) [1:19-mj-06087-MPK] (Entered: 03/11/2019) |
| 03/11/2019 | 4 | Arrest Warrant Issued by Magistrate Judge M. Page Kelley as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, Diane Blake, Todd Blake, Jane Buckingham, Gordon Caplan, I-Hsin Chen, Amy Colburn, Gregory Colburn, Robert Flaxman, Mossimo Giannulli, Elizabeth Henriquez, Manuel Henriquez, Douglas Hodge, Felicity Huffman, Agustin Huneeus, Jr, Bruce Isackson, Davina Isackson, Michelle Janavs, Elisabeth Kimmel, Marjorie Klapper, Lori Loughlin, Toby MacFarlane, William McGlashan, Jr, Marci Palatella, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh, Robert Zangrillo. (Alves-Baptista, Antonia) [1:19-mj-06087-MPK] (Entered: 03/11/2019) |
| 03/11/2019 | 5 | ELECTRONIC NOTICE of Case Assignment as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, Diane Blake, Todd Blake, Jane Buckingham, Gordon Caplan, I-Hsin Chen, Amy Colburn, Gregory Colburn, Robert Flaxman, Mossimo Giannulli, Elizabeth Henriquez, Manuel Henriquez, Douglas Hodge, Felicity Huffman, Agustin Huneeus, Jr, Bruce Isackson, Davina Isackson, Michelle Janavs, Elisabeth Kimmel, Marjorie Klapper, Lori Loughlin, Toby MacFarlane, William McGlashan, Jr, Marci Palatella, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh, Robert Zangrillo; Magistrate Judge M. Page Kelley assigned to case. (Finn, Mary) [1:19-mj-06087-MPK] (Entered: 03/11/2019) |

| 03/12/2019 | 6 | MOTION to Unseal Case as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, Diane Blake, Todd Blake, Jane Buckingham, Gordon Caplan, I-Hsin Chen, Amy Colburn, Gregory Colburn, Robert Flaxman, Mossimo Giannulli, Elizabeth Henriquez, Manuel Henriquez, Douglas Hodge, Felicity Huffman, Agustin Huneeus, Jr, Bruce Isackson, Davina Isackson, Michelle Janavs, Elisabeth Kimmel, Marjorie Klapper, Lori Loughlin, Toby MacFarlane, William McGlashan, Jr, Marci Palatella, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh, Robert Zangrillo by USA. (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/12/2019) |
|---|---|---|
| 03/12/2019 | 7 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered granting 6 Motion to Unseal Case as to Gregory Abbott (1), Marcia Abbott (2), Gamal Abdelaziz (3), Diane Blake (4), Todd Blake (5), Jane Buckingham (6), Gordon Caplan (7), I-Hsin Chen (8), Amy Colburn (9), Gregory Colburn (10), Robert Flaxman (11), Mossimo Giannulli (12), Elizabeth Henriquez (13), Manuel Henriquez (14), Douglas Hodge (15), Felicity Huffman (16), Agustin Huneeus Jr. (17), Bruce Isackson (18), Davina Isackson (19), Michelle Janavs (20), Elisabeth Kimmel (21), Marjorie Klapper (22), Lori Loughlin (23), Toby MacFarlane (24), William McGlashan Jr. (25), Marci Palatella (26), Peter Jan Sartorio (27), Stephen Semprevivo (28), Devin Sloane (29), John Wilson (30), Homayoun Zadeh (31), Robert Zangrillo (32) (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/12/2019) |
| 03/12/2019 | | Arrest of Diane Blake, Todd Blake, Amy Colburn, Gregory Colburn, Agustin Huneeus, Jr, Bruce Isackson, Marjorie Klapper, William McGlashan, Jr, Marci Palatella, Peter Jan Sartorio in California Northern District. (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/15/2019) |
| 03/13/2019 | 8 | NOTICE OF ATTORNEY APPEARANCE Justin D. O'Connell appearing for USA. (O'Connell, Justin) [1:19-mj-06087-MPK] (Entered: 03/13/2019) |
| 03/13/2019 | 12 | NOTICE OF ATTORNEY APPEARANCE Kristen A. Kearney appearing for USA. (Kearney, Kristen) [1:19-mj-06087-MPK] (Entered: 03/13/2019) |
| 03/13/2019 | 13 | NOTICE OF ATTORNEY APPEARANCE Leslie Wright appearing for USA. (Wright, Leslie) [1:19-mj-06087-MPK] (Entered: 03/13/2019) |
| 03/18/2019 | 67 | ELECTRONIC NOTICE OF HEARING for Initial Appearance as to Elizabeth Henriquez, Manuel Henriquez, Agustin Huneeus, Jr, Michelle Janavs, Toby MacFarlane, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh. **Initial Appearance in this District set for 3/29/2019 02:00 PM in Courtroom 1 before Magistrate Judge M. Page Kelley.** (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/18/2019) |
| 03/18/2019 | 57 | Arrest Warrant Returned Executed on 3/12/2019 as to Agustin Huneeus, Jr. (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/18/2019) |
| 03/21/2019 | 120 | Rule 5(c)(3) Documents Received as to Agustin Huneeus, Jr (Danieli, Chris) (Additional attachment(s) added on 3/21/2019: # 1 Exhibit Court Only Document) (Danieli, Chris). [1:19-mj-06087-MPK] (Entered: 03/21/2019) |
| 03/25/2019 | 159 | ELECTRONIC NOTICE OF RESCHEDULING as to Agustin Huneeus, Jr: Initial Appearance reset for 3/29/2019 12:00 PM in Courtroom 1 before Magistrate Judge M. Page Kelley. **Note: change is to time only!** (Belmont, Kellyann) [1:19- |

| | | mj-06087-MPK] (Entered: 03/25/2019) |
|---|---|---|
| 03/29/2019 | 227 | NOTICE *of Disclosure under 18 USC 2518* by USA as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, Diane Blake, Todd Blake, Jane Buckingham, Gordon Caplan, I-Hsin Chen, Amy Colburn, Gregory Colburn, Robert Flaxman, Mossimo Giannulli, Elizabeth Henriquez, Manuel Henriquez, Douglas Hodge, Felicity Huffman, Agustin Huneeus, Jr, Bruce Isackson, Davina Isackson, Michelle Janavs, Elisabeth Kimmel, Marjorie Klapper, Lori Loughlin, Toby MacFarlane, William McGlashan, Jr, Marci Palatella, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane, John Wilson, Homayoun Zadeh, Robert Zangrillo (Rosen, Eric) [1:19-mj-06087-MPK] (Entered: 03/29/2019) |
| 03/29/2019 | 228 | Electronic Clerk's Notes for proceedings held before Magistrate Judge M. Page Kelley: Initial Appearance in this District as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, I-Hsin Chen, Robert Flaxman, Agustin Huneeus, Jr, Elisabeth Kimmel held on 3/29/2019. Interpreter sworn. Court goes over the proceedings and advises the defendants of their rights. Court has colloquy with defendants about whether or not they understands their rights and if they understand the pending charges. Government states charges and maximum penalties for all defendants. All defendants waive the preliminary hearing. Court has colloquy with each defendant about waiving the hearing and finds that their waivers are knowing and voluntary. Court hears counsel on 216 Motion to Modify Conditions of Release as to Gamal Abdelaziz. After hearing argument the Court allows the motion as stated on the record. Government agrees to conditions of release for all defendants. The Court hears counsel on conditions. The Court goes over the conditions of release with each defendant and has a colloquy about whether or not they understand the conditions. The Court reimposes the bonds set in the arresting Districts. Court grants Marcia Abbott an additional month to post secured bond. (Attorneys present: Eric S. Rosen, Justin D. O'Connell, Leslie Wright for the government and Daniel L. Stein, Geoffrey E Hobart, Katherine P. Onyshko, Brian T. Kelly, Joshua C.H. Sharp, Reuben Camper Cahn, Janice Bassil, William D. Weinreb, Michael T. Packard, Jeremy M. Sternberg, William P. Keane, Eoin P. Beirne, R. Robert Popeo for defendants. )Court Reporter Name and Contact or digital recording information: Linda Walsh at lwalshsteno@gmail.com. Interpreter name: Melissa Lo, Language: Mandarin. (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/29/2019) |
| 03/29/2019 | 223 | MOTION for Leave to Appear Pro Hac Vice by William P. Keane Filing fee $ 100, receipt number 0101-7609246. as to Agustin Huneeus, Jr. (Attachments: # 1 Exhibit Certificate of Good Standing)(Sternberg, Jeremy) [1:19-mj-06087-MPK] (Entered: 03/29/2019) |
| 03/29/2019 | 224 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered granting 223 Motion for Leave to Appear Pro Hac Vice Added William P. Keane. Attorneys admitted Pro Hac Vice must register for electronic filing if the attorney does not already have an ECF account in this district. To register go to the Court website at www.mad.uscourts.gov. Select Case Information, then Electronic Filing (CM/ECF) and go to the CM/ECF Registration Form. as to Agustin Huneeus Jr. (17) (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 03/29/2019) |
| 03/29/2019 | 239 | WAIVER of Preliminary Hearing by Agustin Huneeus, Jr (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 04/01/2019) |

| 03/29/2019 | 257 | Magistrate Judge M. Page Kelley: ORDER entered. ORDER Setting Conditions of Release as to Agustin Huneeus, Jr. (Belmont, Kellyann) [1:19-mj-06087-MPK] (Entered: 04/01/2019) |
|---|---|---|
| 04/01/2019 | 270 | Transcript of Initial Appearance as to Gregory Abbott, Marcia Abbott, Gamal Abdelaziz, I-Hsin Chen, Robert Flaxman, Agustin Huneeus, Jr, Elisabeth Kimmel held on March 29, 2019, before Magistrate Judge M. Page Kelley. Court Reporter Name and Contact Information: Linda Walsh at lwalshsteno@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 4/22/2019. Redacted Transcript Deadline set for 5/2/2019. Release of Transcript Restriction set for 7/1/2019. (Scalfani, Deborah) [1:19-mj-06087-MPK] (Entered: 04/01/2019) |
| 04/01/2019 | 271 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) [1:19-mj-06087-MPK] (Entered: 04/01/2019) |
| 04/01/2019 | 275 | NOTICE OF ATTORNEY APPEARANCE: John A. Canale appearing for Agustin Huneeus, Jr. Type of Appearance: Retained. (Canale, John) [1:19-mj-06087-MPK] (Entered: 04/01/2019) |
| 04/08/2019 | 312 | INFORMATION (Felony) as to Gregory Abbott (1) count(s) 1, Marcia Abbott (2) count(s) 1, Jane Buckingham (3) count(s) 1, Gordon Caplan (4) count(s) 1, Robert Flaxman (5) count(s) 1, Felicity Huffman (6) count(s) 1, Agustin Francisco Huneeus (7) count(s) 1, Marjorie Klapper (8) count(s) 1, Peter Jan Sartorio (9) count(s) 1, Stephen Semprevivo (10) count(s) 1, Devin Sloane (11) count(s) 1. (Attachments: # 1 JS45)(Geraldino-Karasek, Clarilde) (Entered: 04/08/2019) |
| 04/08/2019 | 319 | PLEA AGREEMENT as to Agustin Francisco Huneeus (Rosen, Eric) (Entered: 04/08/2019) |
| 04/08/2019 | 324 | ELECTRONIC NOTICE of Case Assignment as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane; Judge Indira Talwani assigned to case. (Alba, Robert) (Entered: 04/08/2019) |
| 04/09/2019 | 328 | ELECTRONIC NOTICE OF HEARING as to Agustin Francisco Huneeus. Waiver of Indictment and Plea to Information hearing set for 5/21/2019 02:30 PM in Courtroom 9 before Judge Indira Talwani. Counsel is to contact U.S. Probation and Pretrial Services as soon as possible http://www.map.uscourts.gov/psi-interview-schedule to determine scheduling of the presentence interview. (MacDonald, Gail) (Entered: 04/09/2019) |
| 04/10/2019 | 337 | ELECTRONIC NOTICE of Case Assignment as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane; If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge M. Page Kelley. (Finn, Mary) (Entered: 04/10/2019) |

| 05/21/2019 | 379 | WAIVER OF INDICTMENT by Agustin Francisco Huneeus (MacDonald, Gail) (Entered: 05/22/2019) |
|---|---|---|
| 05/21/2019 | 380 | Electronic Clerk's Notes for proceedings held before Judge Indira Talwani: Waiver of Indictment and Plea to Information as to Gordon Caplan, Agustin Francisco Huneeus held on 5/21/2019. Case called. Defendants are present with counsel. Defendants are sworn. A Waiver of Indictment is signed and filed in open court by each defendant. Government summarized min/max penalties/fines. Court reviewed the consequences of pleading guilty and waiving appeal rights. Government summarized the essential elements and factual basis of the charges. Plea entered by Gordon Caplan (4) Guilty Count 1, and Agustin Francisco Huneeus (7) Guilty Count 1. Court accepts the plea from each defendant. On the date objections to the PSR are due, Defendant shall notify the clerk whether or not there is an objection to the Court meeting w/Probation prior to sentencing. Counsel are reminded that memoranda outlining the legal and factual issues of this case are due one week prior to sentencing. The court must be notified if no memo will be filed. Defendants released under previously set conditions. (Attorneys present: O'Connell, Wright, Levy, Sternberg, Keane, PO Victoria.)Court Reporter Name and Contact or digital recording information: Cheryl Dahlstrom at cheryldahlstrom@yahoo.com. (MacDonald, Gail) (Entered: 05/22/2019) |
| 05/21/2019 | 382 | Judge Indira Talwani: ORDER entered. PROCEDURAL ORDER re sentencing hearing as to Agustin Francisco Huneeus Sentencing set for 10/4/2019 02:30 PM in Courtroom 9 before Judge Indira Talwani. (MacDonald, Gail) (Entered: 05/22/2019) |
| 05/23/2019 | 389 | REDACTED Transcript of Pleas as to Gordon Caplan, Agustin Francisco Huneeus held on May 21, 2019, before Judge Indira Talwani. Court Reporter Name and Contact Information: Cheryl Dahlstrom at cheryldahlstrom@yahoo.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 6/13/2019. Redacted Transcript Deadline set for 6/24/2019. Release of Transcript Restriction set for 8/21/2019. (Scalfani, Deborah) (Additional attachment(s) added on 5/28/2019: # 1 Redacted) (Scalfani, Deborah). (Entered: 05/23/2019) |
| 05/23/2019 | 390 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 05/23/2019) |
| 06/07/2019 | 407 | MOTION to Modify Conditions of Release as to Agustin Francisco Huneeus. (Sternberg, Jeremy) (Entered: 06/07/2019) |
| 06/11/2019 | 408 | Case as to Agustin Francisco Huneeus Referred to Magistrate Judge M. Page Kelley. (MacDonald, Gail) Motions referred to M. Page Kelley: 06/07/2019 407 MOTION to Modify Conditions of Release (Entered: 06/11/2019) |
| 06/11/2019 | 409 | Magistrate Judge M. Page Kelley: ELECTRONIC ORDER entered granting 407 Motion to Modify Conditions of Release as to Agustin Francisco Huneeus (7) (Belmont, Kellyann) (Entered: 06/11/2019) |
| 06/11/2019 | 410 | Case as to Agustin Francisco Huneeus no longer referred to Magistrate Judge M. Page Kelley. (Belmont, Kellyann) (Entered: 06/11/2019) |

| 08/23/2019 | 411 | Letter (non-motion) as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane *from U.S. Attorney Andrew E. Lelling* (Kearney, Kristen) (Entered: 08/23/2019) |
|---|---|---|
| 08/27/2019 | 412 | Judge Indira Talwani: ORDER entered as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane re: 411 Letter (non-motion). (MacDonald, Gail) (Main Document 412 replaced on 9/3/2019) to fix one non-substantive typo (Vieira, Leonardo). (Entered: 08/27/2019) |
| 08/27/2019 | 414 | ELECTRONIC NOTICE OF HEARING as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane. Hearing re: 412 Order set for 9/10/2019 02:30 PM in Courtroom 9 before Judge Indira Talwani. Because the hearing will address questions of law only, individual Defendants may choose to appear through counsel and are not required to be present. See Fed. R. Crim. P. 43(b)(3). (MacDonald, Gail) (Entered: 08/27/2019) |
| 09/04/2019 | 418 | MOTION Defendant Agustin Francisco Huneeus Motion To Allow His Counsel, Jeremy Sternberg, To Participate Telephonically At The September 10, 2019 Hearing, Or In The Alternative For The Hearing To Begin At 3:30 pm re 412 Order, as to Agustin Francisco Huneeus. (Canale, John) (Entered: 09/04/2019) |
| 09/05/2019 | 420 | Memorandum regarding Methodology for Calculating Gain or Loss Under the Sentencing Guidelines as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane (Rosen, Eric) (Entered: 09/05/2019) |
| 09/05/2019 | 421 | Judge Indira Talwani: ELECTRONIC ORDER entered granting 418 Motion to appear telephonically at the 9/10/19 hearing at 2:30 p.m. as to Agustin Francisco Huneeus (7). Jeremy M. Sternberg, Esquire may appear telephonically by calling 888-808-6929 and entering Code: 8523158 to be connected to the court's conference system. (MacDonald, Gail) (Entered: 09/05/2019) |
| 09/05/2019 | 422 | AMENDED DOCUMENT by USA. Amendment to 420 Memorandum (not related to a motion), as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane: (Rosen, Eric) (Entered: 09/05/2019) |
| 09/06/2019 | 423 | SENTENCING MEMORANDUM by USA as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane (Rosen, Eric) (Entered: 09/06/2019) |
| 09/09/2019 | 430 | Cover letter and table of contents to courtesy appendix to 420 (and amended 422 )submitted by the govt. as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane. (MacDonald, Gail) (Entered: 09/09/2019) |

| 09/09/2019 | 431 | Table of contents to courtesy appendix to 423 submitted by the government as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane (Vieira, Leonardo) (Entered: 09/09/2019) |
|---|---|---|
| 09/10/2019 | 436 | Judge Indira Talwani: ELECTRONIC ORDER: sealing Victim Impact Statement [432-4]. (MacDonald, Gail) (Entered: 09/10/2019) |
| 09/10/2019 | 437 | Electronic Clerk's Notes for proceedings held before Judge Indira Talwani: Hearing as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane held on 9/10/2019. Case called. Court hears argument from counsel. In regard to the Presentence Report of Defendant Huffman, Probation is instructed to make public Probation's response to Objection 1 by the Government; that portion of the PSR shall be docketed. (Attorneys present: Rosen, O'Connel, Stein, Onyshko, Savage, Proctor, Chan, Levy, Walsh, Weinreb, Packard, Murphy, Canale, Gelb, McDougall, Levitt, Boozang, Kenner, Entin, Pappalardo, Hochman, PO Victoria.) Court Reporter Name and Contact or digital recording information: Joan Daly at joanmdaly62@gmail.com. (MacDonald, Gail) (Entered: 09/10/2019) |
| 09/11/2019 | 440 | Probation Office's Submission in Response to Court's Order of September 10, 2019. (MacDonald, Gail) (Entered: 09/11/2019) |
| 09/13/2019 | 443 | Judge Indira Talwani: ORDER entered. MEMORANDUM AND ORDER. (Vieira, Leonardo) (Entered: 09/13/2019) |
| 09/23/2019 | 476 | Transcript of Hearing as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane held on September 10, 2019, before Judge Indira Talwani. Court Reporter Name and Contact Information: Joan Daly at joanmdaly62@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 10/15/2019. Redacted Transcript Deadline set for 10/24/2019. Release of Transcript Restriction set for 12/23/2019. (Scalfani, Deborah) (Entered: 09/23/2019) |
| 09/23/2019 | 477 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 09/23/2019) |
| 09/23/2019 | 479 | Assented to MOTION for Leave to File Excess Pages *for Sentencing Memorandum* as to Agustin Francisco Huneeus. (Canale, John) (Entered: 09/23/2019) |
| 09/25/2019 | 485 | Judge Indira Talwani: ELECTRONIC ORDER entered granting 479 Motion for Leave to File Excess Pages ; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. as to Agustin Francisco Huneeus (7) (MacDonald, Gail) (Entered: 09/25/2019) |

Case 3:20-cr-00383-JD19  Document 4  Filed 10/16/20  Page 60 of 62

| 09/27/2019 | [494](#) | SENTENCING MEMORANDUM by Agustin Francisco Huneeus (Attachments: # [1](#) Exhibit (Exhibit A), # [2](#) Exhibit (Exhibit B))(Canale, John) (Entered: 09/27/2019) |
|---|---|---|
| 09/27/2019 | [495](#) | SENTENCING MEMORANDUM by USA as to Agustin Francisco Huneeus (O'Connell, Justin) (Entered: 09/27/2019) |
| 10/04/2019 | 511 | Electronic Clerk's Notes for proceedings held before Judge Indira Talwani: Sentencing held on 10/4/2019 for Agustin Francisco Huneeus (7), Count(s) 1. Case called. Counsel and Defendant appeared for sentencing. The Court heard sentencing recommendation arguments from both parties. The Court heard Defendant's allocution. The Court imposed the following sentence: Defendant Agustin Francisco Huneeus is committed to the custody of the BOP to be imprisoned for a total term of 5 months. Upon release from imprisonment, the Defendant shall be placed on supervised release with standard and special conditions for a term of 2 years, with 500 hours of community service, $100,000.00 fine, $100 total special assessment fee. No restitution. Defendant advised of appeal rights. Defendant released under previously set conditions and shall report on 11/4/19 to a facility designated by the Bureau of Prisons. (Attorneys present: Kearney, O'Connell, Sternberg, Canale.) Court Reporter Name and Contact or digital recording information: Linda Walsh at lwalshsteno@gmail.com. (MacDonald, Gail) (Entered: 10/04/2019) |
| 10/07/2019 | [519](#) | Judge Indira Talwani: ORDER entered. JUDGMENT as to Agustin Francisco Huneeus (7), Count(s) 1, Defendant Agustin Francisco Huneeus is committed to the custody of the BOP to be imprisoned for a total term of 5 months. Upon release from imprisonment, the Defendant shall be placed on supervised release with standard and special conditions for a term of 2 years, with 500 hours of community service, $100,000.00 fine, $100 total special assessment fee. No restitution. (MacDonald, Gail) (Entered: 10/07/2019) |
| 10/07/2019 | [520](#) | Judge Indira Talwani: ORDER entered. STATEMENT OF REASONS as to Agustin Francisco Huneeus (MacDonald, Gail) (Entered: 10/07/2019) |
| 10/15/2019 | [551](#) | Transcript of Sentencing (Sealed Sidebar Removed) as to Agustin Francisco Huneeus held on October 4, 2019, before Judge Indira Talwani. Court Reporter Name and Contact Information: Linda Walsh at lwalshsteno@gmail.com The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Redaction Request due 11/5/2019. Redacted Transcript Deadline set for 11/15/2019. Release of Transcript Restriction set for 1/13/2020. (Scalfani, Deborah) (Entered: 10/15/2019) |
| 10/15/2019 | 552 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/attorneys/general-info.htm (Scalfani, Deborah) (Entered: 10/15/2019) |
| 11/07/2019 | [591](#) | Assented to MOTION for Return of Property/PostTrial as to Agustin Francisco Huneeus. (Canale, John) (Entered: 11/07/2019) |
| 11/08/2019 | [593](#) | Judgment Returned Executed as to Agustin Francisco Huneeus on 11/4/2019. (Vieira, Leonardo) (Entered: 11/12/2019) |
| 11/08/2019 | [594](#) | NOTICE of Filing by Lamar C. Chapman III. (Vieira, Leonardo) (Entered: 11/12/2019) |

| 11/08/2019 | 595 | MOTION to File Amicus Brief as to Gregory Abbott, Marcia Abbott, Jane Buckingham, Gordon Caplan, Robert Flaxman, Felicity Huffman, Agustin Francisco Huneeus, Marjorie Klapper, Peter Jan Sartorio, Stephen Semprevivo, Devin Sloane. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Cover Letter)(Vieira, Leonardo) (Entered: 11/12/2019) |
|---|---|---|
| 11/12/2019 | 596 | Judge Indira Talwani: ELECTRONIC ORDER:**ALLOWING** ASSENTED-TO MOTION FOR RETURN OF PASSPORTS FILED BY DEFENDANT AGUSTIN FRANCISCO HUNEEUS. The Probation Office is directed to return Defendant's passports to him or his counsel of record upon his release from Bureau of Prison's custody. (Vieira, Leonardo) (Entered: 11/12/2019) |
| 11/13/2019 | 598 | Judge Indira Talwani: ELECTRONIC ORDER: **denying** Lamar Chapman IIIs 595 Motion to File Amicus Brief. Judgment has been entered as to all Defendants, and no circumstances are presented warranting Chapmans participation as an amicus in this matter. (Vieira, Leonardo) (Entered: 11/13/2019) |
| 11/19/2019 | 601 | NOTICE OF ATTORNEY APPEARANCE Carol E. Head appearing for USA. (Head, Carol) (Entered: 11/19/2019) |
| 11/19/2019 | 602 | SATISFACTION OF JUDGMENT as to Agustin Francisco Huneeus (Head, Carol) (Entered: 11/19/2019) |
| 03/16/2020 | 636 | Assented to MOTION to Seal *Emergency Motion to Modify Sentence* as to Agustin Francisco Huneeus. (Canale, John) (Entered: 03/16/2020) |
| 03/16/2020 | 637 | Judge Indira Talwani: ELECTRONIC ORDER entered: **ALLOWING** 636 Motion to Seal as to Agustin Francisco Huneeus (7). (Vieira, Leonardo) (Entered: 03/16/2020) |
| 03/16/2020 | 639 | MOTION to Seal *Government's Response to Defendant's Emergency Motion to Modify Sentence* as to Agustin Francisco Huneeus by USA. (Kearney, Kristen) (Entered: 03/16/2020) |
| 03/16/2020 | 640 | Judge Indira Talwani: ELECTRONIC ORDER entered: **ALLOWING** 639 Motion to Seal as to Agustin Francisco Huneeus (7) (Vieira, Leonardo) (Entered: 03/16/2020) |
| 03/17/2020 | 642 | Judge Indira Talwani: ORDER entered: **ALLOWING** 638 Assented-To Emergency MOTION to Modify Sentence as to Agustin Francisco Huneeus (7). (Vieira, Leonardo) (Entered: 03/17/2020) |
| 03/17/2020 | 643 | Judge Indira Talwani: ORDER entered. AMENDED JUDGMENT as to Agustin Francisco Huneeus: Defendant Agustin Francisco Huneeus is committed to a term of Time Served. Upon release from imprisonment, the Defendant shall be placed on supervised release with standard and special conditions for a term of 2 years, with 500 hours of community service, $100,000.00 fine, $100 total special assessment fee. No restitution. (MacDonald, Gail) (Entered: 03/17/2020) |
| 10/13/2020 | 650 | Probation Jurisdiction Transferred to Northern District of California as to Agustin Francisco Huneeus Transmitted Transfer of Jurisdiction form, with certified copies of indictment, judgment and docket sheet. (Kelly, Danielle) (Entered: 10/13/2020) |

UNITED STATES DISTRICT COURT
1 COURTHOUSE WAY, SUITE 2300
OFFICE OF THE CLERK
BOSTON, MA 02210

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE

NEOPOST
10/13/2020
US POSTAGE $003.00⁰

FIRST-CLASS MAIL



ZIP 02210
041M11276665